IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-50,823-02






EX PARTE KENNETH EUGENE FOSTER, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM BEXAR COUNTY






 Price, J., filed a statement dissenting to the dismissal of the application in which
Johnson and Holcomb, JJ., joined.


DISSENTING STATEMENT



 The applicant raises five claims in his subsequent application for writ of habeas corpus. 
I agree with the Court that the applicant does not invoke a new legal basis for relief, and that
he may not proceed on the merits of any of his claims on that basis under Article 11.071,
Section 5, Subsections (a)(1) and (d). (1) Nor do I perceive any constitutional violation (apart
from a bare claim of actual innocence) that is raised by the new evidence the applicant purports
to bring to us; I therefore agree with the Court that the applicant should not be allowed to
proceed with any of his claims on the basis of Article 11.071, Sections 5(a)(2) or 5(a)(3). (2) 
However, I do believe that the applicant has identified new facts that might support a bare claim
of actual innocence, under Ex parte Elizondo, (3) and would therefore allow the applicant to
proceed on his fourth claim for relief. (4) I therefore dissent to the Court's failure to grant the
applicant's application for stay of execution and to allow him to pursue this claim through the
ordinary course of habeas corpus proceedings.

 The evidence at trial was uncontradicted that the applicant could only have been guilty
of capital murder as a party to the offense. The jury was authorized to convict him as a party
either under the theory that he, "acting with the intent to promote or assist in the commission
of the offense of capital murder, did encourage, aid, or attempt to aid" Maurecio Brown in
killing Michael LaHood, (5) or that he was a member of a conspiracy to commit robbery, and the
killing of LaHood by Brown was accomplished in furtherance of that unlawful purpose and
should have been anticipated as a result of the conspiracy to rob. (6) With respect to this second
theory of parties, the jury was specifically instructed that in order to convict the applicant it
must find, inter alia, that the capital murder of LaHood by Brown "was an offense that should
have been anticipated as a result of carrying out the conspiracy" to commit robbery. The jury
was also expressly instructed that should it find that in killing LaHood, Brown "was acting
independently of [the applicant] in the commission of the offense of robbery," it should acquit
the applicant.

 The applicant was tried jointly with Brown. (7) There were two other members of the
conspiracy who were in the car during the evening when a number of robberies were in fact
committed. One of those co-conspirators, Steen, testified at trial. Although ambiguous, his
testimony could rationally have been construed to support the inference that when Brown got
out of the car and attempted to rob LaHood, and wound up killing him, the conspiracy was still
on-going. The applicant's attorneys at trial made no attempt to clarify the ambiguity.

 Applicant now alleges that, since his direct appeal and even since he filed his initial
application for writ of habeas corpus, he has had an opportunity to interview both Steen and the
other surviving co-conspirator, Dillard. Both have given affidavits in which they assert, in
essence, that by the time Brown got out of the car to rob LaHood, the conspiracy had run its
course, at least as far as the other three were concerned, and Brown was acting out of an
independent impulse. If these assertions are true, it appears evident that the applicant could
not be guilty of capital murder under either of the theories of the law of parties that were
submitted to the jury.

 The applicant asserts that this evidence was previously unavailable to him because, prior
to trial and the filing of his initial writ, he was prevented from ever interviewing either Steen
or Dillard. Affidavits attached to the applicant's subsequent application show that their
respective attorneys refused to give the applicant's trial or initial writ counsel permission to
interview their clients. Without permission from the co-conspirators' attorneys, the
applicant's trial counsel could not ethically attempt to interview them. (8) Trial counsel could
not, therefore, reasonably have been expected to try to clarify Steen's trial ambiguity, since
they had no independent investigative basis to suspect that Steen would resolve the ambiguity
in their client's favor. Nor could initial habeas counsel have had any basis to fault trial counsel
for failing to interview the co-conspirators. Thus, it has only been since the filing of the initial
writ application that the applicant has had a factual basis to contend that he is actually innocent
of committing capital murder as a party to Brown's conduct.

 I do not know whether the applicant may ultimately be able to convince this Court by
clear and convincing evidence that no reasonable juror would ever have found him guilty of
capital murder under the law of parties, given this newly available evidence. (9) But I do think that
he has presented facts that would be sufficient to support such a finding. (10) On the basis of that
showing I would allow him to proceed to the merits of his actual innocence claim. Because
the Court does not, I dissent.

 

Filed: August 7, 2007

Do Not Publish.
1. Tex. Code Crim. Proc. art. 11.071, § 5(a)(1) (a court may not consider the merits of or grant
relief based on a subsequent application "unless the application contains sufficient specific facts establishing
that . . . the current claims and issues have not been and could not have been presented previously in a
timely initial application . . . because the . . . legal basis for the claim was unavailable on the date the
applicant filed the previous application"), & § 5(d) ("For purposes of Subsection (a)(1), a legal basis of
a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not
recognized by or could not have been reasonably formulated from a final decision of the United States
Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction in this state on
or before that date.").
2. Tex. Code Crim. Proc. art. 11.071, § 5(a)(2) & (a)(3) (a court cannot consider the merits of
or grant relief based on a subsequent writ application unless it "contains sufficient specific facts establishing
that" either "by a preponderance of the evidence, but for a violation of the United States Constitution no
rational juror could have found the applicant guilty beyond a reasonable doubt;" or, "by clear and
convincing evidence, but for a violation of the United States Constitution no rational juror would have
answered in the state's favor one or more of the special issues that were submitted to the jury in the
applicant's trial under Article 37.071 or 37.0711").
3. 947 S.W.2d 202 (Tex. Crim. App. 1996).
4. Tex. Code Crim. Proc. art. 11.071, § 5(a)(1) & (e) (a court can consider the merits of a
subsequent writ application that "contains sufficient specific facts establishing that . . . the current claims and
issues have not been and could not have been presented previously in a timely initial application . . .
because the factual . . . basis for the claim was unavailable on the date the applicant filed the previous
application") & ("For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before
a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of
reasonable diligence on or before that date.").
5. Texas Penal Code § 7.02(a)(2).
6. Texas Penal Code § 7.02(b).
7. Brown, the undisputed primary actor in this offense, was executed on July 19, 2006.
8. See Tex. R. Disciplinary P. 4.02(a), reprinted in Tex. Gov't Code, tit. 2, subtit. G app A-1
(2005) ("In representing a client, a lawyer shall not communicate or cause or encourage another to
communicate about the subject of the representation with a person . . . the lawyer knows to be represented
by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is
authorized by law to do so.").
9. See Ex parte Elizondo, supra, at 209.
10. Cf. Ex parte Blue, ___ S.W.3d ___ (Tex. Crim. App. No. AP-75,254, March 7, 2007) (2007
Tex. Crim. App. LEXIS 318), at *31 (" . . . the applicant who can make a threshold presentation of
evidence that, if true, would be sufficient to show by clear and convincing evidence that no rational
factfinder would fail to find him mentally retarded will be allowed to proceed to the merits of his claim in
a subsequent writ application.").